IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BRIDGETOWN CONDOMINIUM HOMEOWNER'S ASSOCIATION, an Oregon condominium, an unincorporated association, | 08-CV-195-BR OPINION AND ORDER |
| Plaintiff, | |
| v. | |
| FORD DEVELOPMENT, INC., an Oregon corporation; GREGORY G. FORD, an individual; and DOES 1-25, | |
| Defendants. | |
| v. | |
| GRANITE STATE INSURANCE COMPANY, | |
| Garnishee. | |

1 - OPINION AND ORDER

**RICHARD LEVIN**
**W. FRANK ELSASSER**
**DANIEL WEBERT**
Levin & Stein
2080 N.W. Everett Street
Suite 101
Portland, OR 97209
(503) 224-3763

       Attorneys for Plaintiff

**BRUCE R. GILBERT**
Smith Freed & Eberhard, PC
111 S.W. Fifth Avenue
Suite 4300
Portland, OR 97204
(503) 227-2424

       Attorneys for Defendant

**DONALD J. VERFURTH**
**NEAL J. PHILIP**
Gordon & Rees LLP
701 Fifth Avenue
Suite 2130
Seattle, WA 98104
(206) 695-5100

       Attorneys for Garnishee

**BROWN, Judge.**

    This matter comes before the Court on Garnishee Granite State Insurance Company's Motion (#29) to Strike Affidavit of Robert Sedillo and Motion (#16) for Summary Judgment.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Granite State's Motion to Strike and **GRANTS** Granite State's Motion for Summary Judgment.

2 - OPINION AND ORDER

## BACKGROUND

The following facts are undisputed unless otherwise noted:

Defendant Ford Development, Inc., was the developer and builder of the Bridgetown Condominium project, which consists of 14 detached two-story single-dwelling units.  Defendant Gregory G. Ford was the sole owner of Ford Development, Inc., at the time.  Defendants substantially completed the project in 2001 and began selling the units as early as February 2001.

On May 17, 2006, Plaintiff Bridgetown Condominium Homeowner's Association brought an action against Defendants in Multnomah County Circuit Court alleging claims for breach of contract, breach of warranty, negligence, and nuisance related to the Bridgetown Condominium project.

In September 2007, Plaintiff and Defendants settled the state-court action and entered into a stipulated judgment in which Defendants agreed to pay to Plaintiff $400,000 and Plaintiff agreed it would seek to obtain the remaining $1,200,000 stipulated to in the judgment from Defendants' insurer, Granite State Insurance Company.  Plaintiff thereafter joined Granite State as garnishee in the state-court action and sought to garnish the $1,200,000 from Granite State.

On February 15, 2008, Granite State removed the garnishment issue from state court to this Court on the basis of diversity jurisdiction.

3 - OPINION AND ORDER

On December 24, 2008, Granite State filed a Motion for Summary Judgment seeking an order that Defendants' insurance policy does not provide coverage for Plaintiff's claims against Defendants.  On February 3, 2009, Granite State filed a Motion to Strike the Affidavit of Robert Sedillo submitted by Plaintiff.

### MOTION TO STRIKE AFFIDAVIT OF ROBERT SEDILLO (#29)

Granite State moves to strike the Affidavit of Robert Sedillo filed by Plaintiff in opposition to Granite State's Motion for Summary Judgment.  Granite State contends the Affidavit contains "improper use of expert testimony to interpret the unambiguous language of an insurance contract, which invades the province of the court to decide issues of law."

Under Oregon law, the construction of an insurance contract is a question of law for the court. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006)(citing *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470 (1992)). "[Expert] testimony cannot be used to provide legal meaning or interpret the policies as written." *McHugh v. United States Automobile Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)(citing *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (expert testimony is not proper for issues of law because the role of experts is to interpret and to analyze factual evidence rather than to testify about the law). *See also Nationwide*

4 - OPINION AND ORDER

*Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008)(district court did not abuse its discretion when it excluded expert-witness testimony that contained legal conclusions).

The Ninth Circuit has held it is error for a district court to allow a witness to testify to the unexpressed subjective intent of a party when it entered into a written agreement. *Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 737 (9th Cir. 1980). The Ninth Circuit explained:

> To the extent that the district court relied upon the [expert testimony] as to custom and usage in the oil industry in eliminating any hypothetical ambiguity in the agreements, we find no error. The court went further, however, by admitting testimony of expert witnesses concerning their opinions as to the legal effect of the agreements and also by permitting a witness to express the subjective intent of the parties in entering into the agreements. The admission of such evidence was erroneous.
>
> * * *
>
> The construction of written agreements belongs to the court and witnesses should not have been permitted to testify as to the legal effect of the agreements. In addition, at least one defense witness was permitted to testify as to the unexpressed subjective intent of the parties, and this, too, was improper.

*Id.* at 737.

The basis for Granite State's Motion for Summary Judgment is that the insurance policy at issue contains a "Designated Work Exclusion" that excludes coverage for Plaintiff's claims against

5 - OPINION AND ORDER

Defendants.  In his Affidavit, Sedillo, a real-estate consultant, testifies as to his experience in the insurance industry and states his opinion as to what type of endorsement the "Designated Work Exclusion" is.  In paragraphs five and seven of his Affidavit, however, Sedillo also gives his opinion as to the proper interpretation of the Designated Work Exclusion and Granite State's likely intent when it included this exclusion in its policy.

On this record, the Court concludes Sedillo's opinions in paragraphs five and seven are impermissible expert testimony because they offer Sedillo's opinions as to the proper legal interpretation of the policy and the intent of Granite State. Accordingly, the Court grants Granite State's Motion to Strike paragraphs five and seven of Sedillo's Affidavit and denies the Motion to Strike as to the remaining paragraphs of the Affidavit.

## MOTION FOR SUMMARY JUDGMENT (#16)

As noted, Granite State moves for summary judgment on the ground that the insurance policy at issue contains a "Designated Work Exclusion" that excludes coverage for Plaintiff's claims against Defendants.  Plaintiff, however, contends the "Designated Work Exclusion" is ambiguous and, when properly interpreted, does not exclude coverage for Plaintiff's claims against Defendants.

6 - OPINION AND ORDER

**I.    Policy language.**

Granite State issued Policy No. 02-LX-7308336-0/000 to

Defendants, which was effective from January 24, 2002, through

April 15, 2002.  The policy contains the following provisions:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
LIABILITY**

**1.    Insuring Agreement**

**a.**   We will pay those sums that the insured
becomes legally obligated to pay as
damages because of "bodily injury"or
"property damage" to which this
insurance applies.

**b.**   This insurance applies to "bodily
injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property
damage" is caused by an occurrence"
that takes place in the "coverage
territory"; and

**(2)**   The "bodily injury" or "property
damage" occurs during the policy
period.

Decl. of Neal J. Philip, Ex. 5 at 10.  The policy defines

"property damage" as "[p]hysical injury to tangible property"

and "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful

conditions."  *Id*., Ex. 5 at 11, 12.  The policy also includes a

Designated Work Exclusion:

7 – OPINION AND ORDER

**EXCLUSION – DESIGNATED WORK**

> It is understood and agreed that this insurance
> does not apply to "bodily injury" or "property
> damage" including the "products-completed
> operations hazard" and arising out of or resulting
> from "your-work" or "your product" on:
>
> I.   Any of the following:
>
>         A.   Condominiums, multi-unit homes,
>              townhouses, or apartment buildings which
>              contain 5 or more single family units.
>
>         B.   Any building or structure in excess of
>              three (3) stories or any building or
>              structure in excess of forty (40) feet
>              in height.

*Id.*, Ex. 5 at 13.

**II.   Contract-interpretation standards.**

Because this matter is before the Court on the basis of
diversity jurisdiction, the Court "must apply the substantive law
of the forum state" when interpreting the insurance policy.  *See*
*Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 209 (9th Cir.
1980).

As noted, under Oregon law the construction of a contract is
a question of law for the court.  *Holloway*, 341 Or. at 649
(citations omitted).  The court must "ascertain the intention of
the parties to the insurance policy . . . based on the terms and
conditions of the insurance policy."  *Id.* at 649-50 (citing Or.
Rev. Stat. § 742.016).

"If an insurance policy explicitly defines the phrase in
question, [the court] appl[ies] that definition."  *Id.* at 650.

*See also Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6*, 180 Or. App. 461, 467 (2002).

> If the policy does not define the phrase in question, [the court] resort[s] to various aids of interpretation to discern the parties' intended meaning.  Under that interpretive framework, we first consider whether the phrase in question has a plain meaning, *i.e.*, whether it is susceptible to only one plausible interpretation.  If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis.  If the phrase in question has more than one plausible interpretation, we will proceed to the second interpretive aid.  That is, we examine the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole.  If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company.  However, . . . a term is ambiguous . . . only if two or more plausible interpre-tations of that term withstand scrutiny, *i.e.*, continue[] to be reasonable despite our resort to the interpretive aids outlined above.

*Id*.

**III. Analysis.**

Granite State contends it is entitled to summary judgment because the judgment on which Plaintiff seeks to collect is for damages arising from Defendants' work constructing the Bridgetown Condominiums and, therefore, is excluded by the Designated Work Exclusion.

**A.   Plaintiff's interpretation of the Designated Work Exclusion.**

Because the insurance policy does not define the term

"condominium," Plaintiff contends the Court first must determine whether the plain meaning of that term "is susceptible to only one plausible interpretation" or whether the term is ambiguous. According to Plaintiff, the term "condominium" in the Designated Work Exclusion is ambiguous and, when properly interpreted, does not exclude coverage for Plaintiff's claims against Defendants.

Plaintiff urges the Court to look to the Oxford Compact Dictionary, which defines condominium as

> 1. the joint control of a state's affairs by other states. 2. N. Amer. a building or complex containing a number of individually owned flats or houses. 3. N. Amer. a flat or house in a condominium.

Compact Oxford English Dictionary (2008).  With such a definition in mind, Plaintiff contends a typical developer purchasing the type of insurance at issue here might understand "condominium" to mean either the building complex containing the units or the individual units themselves, and, therefore, the term is "susceptible" to more than one meaning.  Accordingly, Plaintiff asserts the Court should proceed to the "second interpretive aid" set out in *Holloway*:  "[t]hat is[,] . . . examine the [term] in light of the particular context in which that [term] is used in the policy and the broader context of the policy as a whole." *Holloway*, 341 Or. at 650.

In addition, Plaintiff argues the term "condominium" as used in the Designated Work Exclusion does not exclude coverage

for the Bridgetown Condominium project because ¶ IA of the
Designated Work Exclusion, which excludes condominiums that
"contain 5 or more single family units," intends to exclude
coverage for condominiums that are "comparatively large
buildings, that is, structures which contain 5 or more single
family units."  Plaintiff asserts Defendants' intent was to
purchase a policy "for a series of single family dwellings" and
Granite State's intent "was to cover the construction of
buildings that contained" fewer than "5 single family dwellings."
Plaintiff relies on language in the "LOC CLASSIFICATION" section
of the policy, which "limits coverage to one and two family
dwellings."  In addition, the "Builder's Risk" section of the
policy "schedules coverage for 1-4 family dwellings."

        Plaintiff also notes the language in ¶ IB of the
Designated Work Exclusion excludes coverage for "[a]ny building
or structure in excess of three (3) stories or any building or
structure in excess of forty (40) feet in height."  When the LOC
CLASSIFICATION and Builder's Risk provisions are read together
with the language of ¶¶ IA and IB of the Designated Work
Exclusion, Plaintiff contends they establish Granite State's
intent was to exclude coverage for "the erection of complicated,
tall, multi-unit buildings."  The Bridgetown Condominiums,
however, consist of 14 single-family dwellings rather than tall,
multi-unit buildings, and, therefore, Plaintiff argues the

11 - OPINION AND ORDER

Designated Work Exclusion does not exclude coverage for the Bridgetown Condominium project.

Finally, Plaintiff asserts its interpretation of the Designated Work Exclusion is supported by the *ejusdem generis* principle of contract interpretation; *i.e.*, when a document "uses 'nonspecific or general phrases' as well as a list of items, [the] court . . . construes the [document] 'as referring only to other items of the same kind.'"  *Liberty v. State Dep't of Transp.*, 342 Or. 11, 20 (2006)(quoting *Vannatta v. Keisling*, 324 Or. 514, 533 (1997)).  *See also Lewis v. CIGNA Ins. Co.*, 339 Or. 342, 350-51 (2005)(under the *ejusdem generis* rule, the court examines basic characteristics of enumerated items when construing more general words).  Specifically, Plaintiff points out that ¶ IA of the Designated Work Exclusion contains a list of "specific things" with shared characteristics of structures that "typically are buildings where dwelling units are immediately adjacent to another" (*i.e.*, condominiums, multi-family homes, townhouses, and apartment buildings).  Here, however, the Bridgetown Condominium project "consists of [detached] adjacent buildings that each contain only one, single family unit," which are "different in kind" than the specific items enumerated in the Designated Work Exclusion.

For these reasons, Plaintiff asserts the phrase "condominiums . . . which contain 5 or more single family units"

12 - OPINION AND ORDER

in the Designated Work Exclusion does not exclude coverage for
the Bridgetown Condominium project.

**B.   Granite State's interpretation of the Designated Work Exclusion.**

Granite State asserts the fact that the insurance
policy does not include an explicit definition of "condominium"
does not render the term ambiguous.  Under Oregon law, a party
who asserts an insurance policy term is ambiguous must set out
alternative definitions of the term that are reasonable within
the context of the policy before the court can find the term to
be ambiguous.  *Am. Hardware Ins. Group v. West One Automotive
Group, Inc.*, 167 Or. App. 244, 248 (2000).  Granite State
contends Plaintiff has not offered a reasonable definition of
"condominium" within the context of the entire policy that is
alternative to Granite State's interpretation.  Although Granite
State does not appear to dispute the definition of condominium
provided by Plaintiff from the Compact Oxford English Dictionary,
Granite State points out that the dictionary definition
specifically includes "a building or complex containing a number
of individually owned flats or houses."  Granite State contends
that definition clearly encompasses the Bridgetown Condominium
project, and, therefore, the project falls within the plain
meaning of the definition of "condominium" in the Designated Work
Exclusion.  Consequently, Granite State maintains the Court need
not proceed further in interpreting the contract.

13 - OPINION AND ORDER

In particular, Granite State contends Plaintiff's
suggested interpretation of the Designated Work Exclusion as
applying only to "comparatively large" buildings is unreasonable
because Granite State would not have needed to include any
language about the number of units if Plaintiff's interpretation
were correct.  Moreover, ¶ IB of the Designated Work Exclusion
sets out limitations as to the size of the single structures
allowed, which indicates Granite State and Defendants intended to
exclude large single-building projects from coverage regardless
of the number of units.  Thus, the presence of ¶ IA, which
excludes projects that have more than five units, indicates
Granite State and Defendants also intended to exclude projects
that contained more than 5 units regardless of the size of the
individual buildings.  If the Court adopts Plaintiff's
interpretation, Granite State contends ¶ IA would be superfluous.
As the *Hoffman* court noted, a superfluous interpretation would be
inconsistent with Oregon law because "[w]e assume that parties to
an insurance contract do not create meaningless provisions."
*Hoffman*, 313 Or. at 472.

Granite State also notes the language in the "Builder's
Risk" section of the policy that "schedules coverage for 1-4
family dwellings" reflects the policy was intended to cover
smaller projects of 1-4 family dwellings rather than projects
such as the Bridgetown Condominium project containing 14 single-

family units.

In addition, Granite State contends Plaintiff's
reliance on the doctrine of *ejusdem generis* is misplaced because
the language of the Designated Work Exclusion does not contain an
enumeration of specific things followed by general words.
Although the Designated Work Exclusion contains an enumeration of
specific things (*i.e.*, condominiums, multi-family homes,
townhouses, and apartment buildings), that enumeration is
followed by an even more specific description (*i.e.*, "which
contain 5 or more single family units.").  Accordingly,
application of the *ejusdem generis* doctrine does not establish
either ambiguity in the Designated Work Exclusion nor indicate
the Designated Work Exclusion does not apply.

**C.  Analysis**.

Because the insurance policy at issue does not define
"condominium," the Court first considers the plain meaning of
that term.  *See Joseph Educ. Ass'n*, 180 Or. App. at 467 ("If the
policy does not define the phrase in question, [the court] . . .
first consider[s] whether the phrase in question has a plain
meaning.").  To determine whether a phrase or term has a plain
meaning, Oregon courts have examined various sources.  *See, e.g.,*
*ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.,* 222 Or. App.
453, 488-89 (2008)(court looked to dictionary definitions of
terms in the phrase "other fixed or moveable things whatsoever"

15 - OPINION AND ORDER

to determine whether the phrase had a plain meaning); *Schmidt v. Archdiocese of Portland in Oregon*, 218 Or. App. 661, 672 (2008)(court looked to dictionary definition of "cruelty"); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Starplex Corp.*, 220 Or. App. 560, 588 (2008)(court looked to other cases in which the court had interpreted the phrase at issue).

Here the Court concludes the descriptions of condominium found in the dictionary definition provided by Plaintiff establish the plain meaning of the term "condominium" encompasses both buildings or complexes containing a number of individually-owned flats or houses and a flat or house within a condominium project. Accordingly, the term "condominium" has more than one plausible interpretation. The Court, therefore, examines the term "condominium" in light of the context in which the term is used in the policy.

The Court agrees with Granite State that if the Court adopted Plaintiff's interpretation of the Designated Work Exclusion, it would improperly render ¶ IA of the Designated Work Exclusion superfluous. Thus, the Designated Work Exclusion does not exclude coverage only for condominiums that are "comparatively large buildings . . . which contain 5 or more single family units." Finally, for the reasons set out by Granite State, the Court agrees the doctrine of *ejusdem generis* does not establish the Designated Work Exclusion does not apply

to the Bridgetown Condominium project.

Accordingly, after reviewing the insurance policy as a whole, the Court concludes the Designated Work Exclusion applies to the Bridgetown Condominium project and, therefore, excludes coverage for that project under the policy.

**IV.  Policy coverage for subcontractor work at the Bridgetown Condominium project.**

Plaintiff also asserts the definitions in the policy for "Your Work" and "Damage to Your Work" are "at odds and should be resolved in favor of coverage."

The policy defines "Your Work" in pertinent part as "[w]ork or operations performed by you or on your behalf."  Philip Decl., Ex. 5 at 12.  Thus, the definition section of the policy defines "Your Work" to include work performed by Defendants or their subcontractors.

Under the "Exclusions" section of the insurance policy, the "Damage to Your Work" Exclusion excludes in pertinent part coverage for "property damage" "to 'your work' arising out of it or any part of it.'"  Decl. of Frank Elsasser, Ex. 5 at 1.  The "Damage to Your Work" Exclusion, however, contains an exception: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor."

Plaintiff contends the "Damage to Your Work" Exclusion does not apply because the construction of the Bridgetown Condominium

17 - OPINION AND ORDER

project was performed mainly by subcontractors, and, "following this, the more specific definition, the Project work performed by subcontractors would not be considered [Defendants'] or, as defined in the Policy 'Your Work'" and, therefore, "coverage for [Plaintiff's] claim exists."  In essence, Plaintiff contends the term "Your Work" excludes work performed by subcontractors through application of the "Damage to Your Work" Exclusion, and, as a result, the Designated Work Exclusion does not exclude work performed by subcontractors on the Bridgetown Condominium project.

The Court, however, again notes the definition of "Your Work" in the policy specifically includes work performed by subcontractors, and the Court may not ignore or rewrite the definition of "Your Work" when it interprets the Designated Work Exclusion.  In any event, the "Damage to Your Work" Exclusion does not affect the definition of condominium, which is at the heart of the Designated Work Exclusion; the "Damage to Your Work" Exclusion is an entirely separate exclusion from the Designated Work Exclusion; and, finally, the "Damage to Your Work" Exclusion is irrelevant to interpretation of the Designated Work Exclusion.

After reviewing the policy as a whole, the Court concludes the definition of "Your Work" is not ambiguous; "Your Work" as defined in the policy includes work performed by subcontractors; and, therefore, the Designated Work Exclusion applies to work

performed by subcontractors.

In summary, the Court concludes both the plain meaning of "condominium" in the Designated Work Exclusion and its meaning within the context of the policy as a whole indicates the Designated Work Exclusion applies to the Bridgetown Condominium project, and, therefore, the insurance policy at issue excludes coverage for the Bridgetown Condominium project.  The Court, therefore, grants Granite State's Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Granite State Insurance Company's Motion (#29) to Strike Affidavit of Robert Sedillo and **GRANTS** Granite State's Motion (#16) for Summary Judgment.

IT IS SO ORDERED.

DATED this 16th day of June, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


19 - OPINION AND ORDER